UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aaron Reeves, individually, and on behalf of
all others similarly situated,

       Plaintiffs,

v.                                                                                  No. 11-cv-729 (JNE/TNL)
                                                                                 ORDER

Messerli & Kramer, P.A.,

       Defendants.

---

Mark L. Vavreck, Esq., Martineau, Gonko & Vavreck, PLLC, appeared for Plaintiff Aaron Reeves.

Jennifer M. Zwilling, Esq., Messerli & Kramer, PA, appeared for Defendant Messerli & Kramer, PA.

---

Plaintiff Aaron Reeves brings this putative class action for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (2006), and for common law conversion against Defendant Messerli & Kramer, PA.[1] Plaintiff alleges that Defendant violated the law when it failed to return, in the absence of any demand from Plaintiff, garnished funds that were exempt. The matter is before the Court on Defendant's motion for summary judgment. For the reasons stated below, the Court grants the motion.

**I.    BACKGROUND**

Prior to December 10, 2007, Plaintiff incurred a consumer debt with Money Centers, Inc. Money Centers, Inc. transferred the debt to Defendant for collection, and Defendant sued

---

[1] The class has not been certified in this case. Plaintiff was granted leave to amend the class definition in his complaint in an Order dated November 28, 2011 [Docket No. 44]. Plaintiff has not filed an amended complaint.

1

Plaintiff in Hennepin County District Court in the State of Minnesota to recover the debt. A judgment was entered against Plaintiff on December 10, 2007.

In 2010, Defendant began its collection efforts to satisfy the judgment. On June 24, Defendant sent Plaintiff a Garnishment Exemption Notice and Notice of Intent to Garnish Earnings. On July 6, Plaintiff sent Defendant a Debtor's Exemption Claim Notice, stating that his earnings were exempt from garnishment because he received need-based state health benefits through MinnesotaCare. Plaintiff's Debtor's Exemption Claim Notice did not include his MinnesotaCare account number. Defendant sent correspondence to MinnesotaCare requesting verification. On July 7, Defendant served a Garnishment Summons on Plaintiff's employer pending proof of Plaintiff's claimed exemption. Plaintiff's wages were garnished twice in August 2010. In response, Plaintiff faxed Defendant another Debtor's Exemption Claim Notice, stating that he received MinnesotaCare benefits and included his case number. Defendant sent this second Exemption Claim Notice to MinnesotaCare the same day requesting verification. Plaintiff's earnings were garnished two more times in September 2010. All collected funds were immediately applied to Plaintiff's outstanding debt.

On September 22, Plaintiff's spouse called Defendant and asked why Plaintiff's earnings were still being garnished. Defendant explained that MinnesotaCare had not yet verified the account. Defendant informed Plaintiff's spouse what documentation would help expedite the verification process. On September 28, Plaintiff faxed Defendant a premium invoice from MinnesotaCare as verification. Finding the invoice sufficient verification, Defendant sent a letter to Plaintiff's employer that same day requesting that all further withholding stop. An additional sum was garnished on October 1.

On November 4, 2010, counsel for Plaintiff called Defendant, inquiring why Defendant had not returned the garnished funds after it received proof that Plaintiff's earnings were exempt. The following day, Defendant returned the garnished funds accompanied by a letter to Plaintiff's counsel that stated: "your client never asked for the funds previously garnished to be returned to him, and we had no reason to know he wanted the funds returned." (Zwilling Aff. ¶ 20, Ex. H, ECF No. 42). Plaintiff subsequently brought this putative class action for violations of §§ 1692d, 1692f, and 1692f(1) of the FDCPA and for common law conversion. Defendant moves for summary judgment arguing that it complied with Minnesota statute and therefore could not have violated the FDCPA or be liable for conversion.

## II.   DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties do not dispute any material facts in this case. Therefore, the Court considers whether Defendant is entitled to judgment as a matter of law. Because liability for conversion would qualify as a violation of the FDCPA, the Court turns first to the conversion claim.

### A. Conversion

The Court exercises supplemental jurisdiction over Plaintiff's state law claim for conversion. *See* 28 U.S.C. § 1367(a) (2006) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Plaintiff alleges that Defendant committed conversion by retaining Plaintiff's funds after it acknowledged that they were exempt. Further, Plaintiff alleges that

3

Defendant's acceptance of the funds garnished on October 1, 2010—after Defendant had accepted Plaintiff's documentation of exemption and had requested Plaintiff's employer stop the withholding—was conversion. Defendant argues that it cannot be liable for conversion, because it complied with all Minnesota statutes regarding exemptions and thus had a lawful justification for collecting and retaining the funds.

Conversion is an act of willful interference with personal property that deprives another of its use and possession without lawful justification. *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 585 (Minn. 2003). The elements of common-law conversion are: "(1) the plaintiff has a property interest and (2) the defendant deprive[d] the plaintiff of that interest." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 986 (8th Cir. 2008) (quoting *Olson v. Moorhead Country Club*, 568 N.W.2d 871, 872 (Minn. Ct. App. 1997)). A wrongful levy of another's property can constitute conversion. *Lundgren v. W. State Bank of Duluth*, 250 N.W. 1, 2 (1933); *accord Rahaman v. Weber*, No. A04-882, 2005 WL 89413, at *2 (Minn. Ct. App., Jan. 18, 2005) ("The common-law torts of trespass and conversion by wrongful levy have existed since at least the late 1800s."). It is undisputed that Plaintiff had a property interest in his wages. But Defendant asserts that it did not illegally deprive Plaintiff of that interest because it had a lawful justification under Minnesota Statute §§ 551.05 and 551.06 to retain the funds.

Minnesota Statute § 551.06 discusses exemption and provides in relevant part: "If the statement of exemption is received by the attorney for the judgment creditor, the attorney *may still cause a levy to be served* subject to sanctions provided in section 551.05, subdivision 8." Minn. Stat. § 551.06 subd. 8 (2006) (emphasis added). Section 551.05 further explains: "Upon motion of any party in interest, on notice, the court shall determine the validity of any claim of exemption." Minn. Stat. § 551.05, subd. 8 (2006). Defendant argues that these statutes authorized

them to collect and retain the claimed exempt funds until the validity of the exemption was determined by a court. It is undisputed that Defendant was authorized under Minnesota Statute § 551.06 to issue the garnishment summons even though Plaintiff had claimed an unverified exemption. Plaintiff argues that Defendant nevertheless committed conversion, because despite the applicable statutes, common law claims are still available.

> The language of [Minnesota Statute] section 551.05 does not address the common-law torts or state that alternative remedies are precluded. Therefore, we follow the general rule that appellant's common-law remedies are not abrogated and conclude that appellant is not precluded from bringing a claim for wrongful levy. *Minn. Equal Access* [*Network Servs. v. Burlington Northern & Santa Fe R.R. Co.*, 646 N.W.2d 911, 914 (Minn. Ct. App. 2002)].

*Rahaman*, 2005 WL 89413, at *2. Because Plaintiff can enforce the statutorily created right of exemption through common law conversion, the question is whether Defendant violated the common law.

Both parties cite to *Lynd v. Picket*, 1862 WL 1259 (Minn. 1862) in support of their arguments. *Lynd* held that a judgment creditor is liable for conversion when it levies property that it knew was exempt before service and execution of the levy. *Id.* at *7. In *Lynd*, the judgment creditor knew the property at issue—"one span of horses, double set of harness, and neck yoke"—was exempt because it was of a type that was exempted absolutely by statute. *Id.* at *6. The 1858 law absolutely exempted a person's "only team and tackle" from levy. *Id.* at *6-7. Wages, in contrast, are not absolutely exempt. Indeed, wages are subject to garnishment unless a debtor qualifies for one of the limited statutory exemptions. *See* Minn. Stat. §§ 550.37 and 551.06 subd. 6. *Lynd* discusses this situation as well: "where the debtor's property is so situated that the party cannot know that it is exempt, there may be justification for a levy, and liability therefor only arise [sic.], *upon proper demand for the exempt property*." *Lynd*, 1862 WL 1259, at

*6 (emphasis added). Defendant could not know that Plaintiff's wages were exempt at the time it acted to enforce the judgment against Plaintiff. If *Lynd* provides the rule of decision—and both parties rely on it—the common law does not require automatic return of exempt property. Defendant cannot be liable for conversion unless it retained Plaintiff's property after Plaintiff made a "proper demand for the exempt property." *Id.* Here, Defendant returned Plaintiff's property immediately after he requested its return.

Plaintiff alleges that even if Defendant was not required to automatically return all of the exempt funds, Defendant illegally converted the funds it received on October 1, 2010—after Defendant knew Plaintiff's wages were exempt. Although Defendant sent a request to Plaintiff's employer to cease the garnishment on September 28, 2010, Plaintiff's wages were still garnished on October 1, 2010 because the withholding occurred prior to the employer receiving the release. The October 1, 2010 garnishment resulted from the same July 7, 2010 garnishment summons as all the other funds collected by Defendant. The July 7, 2010 garnishment summons was sent *before* Defendant knew Plaintiff's wages were exempt. The Court finds no pertinent distinction between the funds garnished on October 1, 2010 and those collected earlier.

Defendants complied with the common law and are thus entitled to summary judgment on Plaintiff's claim of conversion.

   **B.  FDCPA**

Plaintiff alleges violations of the FDCPA, 15 U.S.C. §§ 1692d, 1692f, and 1692f(1) (2006). Defendant argues that the retention of exempt funds until demanded does not violate the FDCPA. The Court begins with Plaintiff's claim under § 1692d that provides in relevant part: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

Defendant argues that Plaintiff has not alleged conduct by Defendant that rises to the level of that protected by § 1692d. The Court has the authority to rule on whether Defendant's conduct was harassing, oppressive or abusive. *Gallagher v. Gurstel, Staloch & Chargo, P.A.*, 645 F. Supp. 2d 795, 799 (D. Minn. 2009) ("'[A]lthough the question of 'whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, . . . Congress has indicated its desire for the courts to structure the confines of § 1692d.'" (quoting *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006))). Defendant's conduct does not fit within any of the specific examples provided in the text of § 1692d. Defendant did not threaten violence, use profanity, or demean Plaintiff, nor did it publish Plaintiff's name or advertise to sell his debt. 15 U.S.C. § 1692d(1)-(4). Defendant did not call frequently or yell at Plaintiff. 15 U.S.C. § 1692d(5)-(6). The statutory examples are a non-exclusive list, but Defendant's conduct is more akin to that of debt collectors whose conduct was not found to violate § 1692d. *Compare Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 809 (N.D. Ill. 2010) (finding that a debt collector calling a debtor a liar, laughing at him, and accusing him of making excuses did not constitute a violation of § 1692d) *and Bryant v. Bonded Accounts Serv./Check Recovery, Inc.*, 208 F.R.D. 251, 256 (D. Minn. 2000) (finding no violation of § 1692d where language of a letter implied the debtor would not be able to get credit in an emergency) *with Erickson v. Messerli & Kramer P.A.*, No. 09-3044, 2011 WL 1869044, at *8 (D. Minn., May 16, 2011) (encouraging a plaintiff to come and engage in an altercation with the defendant violated § 1692d(1)) *and Horkey v. J.V.D.B. & Assocs., Inc.*, 179 F. Supp. 2d 861, 868 (N.D. Ill. 2002) (finding that a defendant's use of profane language violated Section 1692d(2)). Defendant's conduct does not rise to the level of harassing, oppressive, or abusive behavior. Instead, Defendant affirmatively assisted

Plaintiff by outlining for his wife the documentation that would expedite the verification of his asserted exemption.

Plaintiff also alleges that Defendant violated § 1692f because it was unlawful, or at least unfair, for Defendant to keep the garnished wages once Defendant knew that they were exempt. Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. More specifically, a debt collector violates § 1692f(1) if it collects "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Thus, § 1692f(1) can be premised on a violation either of a Minnesota statute or common law. As explained above, Defendant did not violate common law. Plaintiff did not include any claims under Minnesota statutes in this lawsuit. Although Plaintiff implies in argument that Defendant acted in bad faith thereby contravening Minnesota Statute § 551.05, subdivision 8, he does not cite to any facts or case law to support a bad faith claim.[2] Because Plaintiff cannot prove Defendant violated State law and thereby § 1692f(1), his only remaining claim is under § 1692f, that Defendant's conduct was "unfair or unconscionable." 15 U.S.C. § 1692f.

Even if § 1692f applies to retention as well as collection of funds, Plaintiff fails to show how Defendant's conduct was unfair or unconscionable. Plaintiff does not point to any cases where a debt collector was found liable under § 1692f for retaining funds after determining they were exempt. Instead, Plaintiff analogizes to a circumstance that has been found to violate § 1692f: where debt collectors file lawsuits they know are time-barred, to pressure debtors into

---

[2]   Minnesota Statute § 551.05, subd. 8 provides in relevant part: "If the claim of exemption is upheld, and the court finds that the judgment creditor disregarded the claim of exemption in bad faith, the judgment debtor shall be awarded costs, reasonable attorney fees, actual damages, and an amount not to exceed $100."

paying with the hope that these debtors will fail to assert the statute of limitations affirmative defense. *See Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1488 (M.D. Ala. 1987). The Court is not persuaded. Plaintiff was not expected to argue an affirmative defense against a lawsuit. All that was required of Plaintiff was that he ask for the funds back—a minor requirement, and one recognized by the Minnesota courts since 1862. Minnesota statutes recognize that a debtor might, in fact, elect that exempt funds be applied toward the debt. *See* Minn. Stat. § 551.06 subd. 6. In this case, all of the funds Defendant collected were immediately applied to Plaintiff's debt. Section 551.06 subdivision 6 requires a debt collector to inform the debtor of various options, to include claiming an exemption or arranging for a settlement. *Id.* (requiring a notice to include language such as "[i]f you wish to claim an exemption. . ." and "[y]ou may wish to contact the attorney for the judgment creditor in order to arrange for a settlement of the debt"). The statute's drafters included permissive language that recognizes that not all debtors qualifying for an exemption will wish to claim one in lieu of paying down their debt. Requiring Plaintiff to communicate his choice was neither unfair nor unconscionable.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion for Summary Judgment [Docket No. 40] is GRANTED.

2. Counts I and II of the Complaint are DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 16, 2012

                                                    s/ Joan N. Ericksen
                                                   JOAN N. ERICKSEN
                                                   United States District Judge